**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

CTF DEVELOPMENT, INC. and )
PERFECT LUCK ASSETS LIMITED, )
                                  )
           Plaintiffs, )
                                  )
           v. )           C.A. No. 2021-0459-KSJM
                                  )
BML PROPERTIES LTD., )
                                  )
           Defendant. )

**ORDER RESOLVING MOTION TO DISMISS AND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.        In 2010, a subsidiary of defendant BML Properties Ltd. ("BML") set out to construct a resort in the Bahamas called the "Baha Mar Resort." The project floundered financially and wound up in liquidation proceedings in the Bahamas. Later, BML sued entities involved in the project in New York state court alleging fraud and intentional delay in construction. In the New York action, BML served CTF Development, Inc. ("CTFD") with a subpoena issued by the Delaware Superior Court seeking documents from CTFD and its affiliates. Through a September 4, 2020 letter agreement resolving the subpoena, CTFD stipulated to work with its affiliates to produce documents in exchange for BML's agreement not to seek additional discovery from CTFD or its affiliates (the "Letter Agreement"). In April 2021, BML filed a request for letter rogatory in the New York action for documents from one of CTFD's affiliates, Perfect Luck Assets Limited ("Perfect Luck" and, with CTFD, "Plaintiffs"). In response, CTFD filed this lawsuit to enforce the Letter Agreement. This Order resolves BML's motions to dismiss and the plaintiffs' motion for partial summary judgment. All of the pending motions are denied for reasons that follow.

**FACTUAL BACKGROUND**

2. Unless otherwise stated, the facts are drawn from the plaintiffs' Verified Amended Complaint and the exhibits attached thereto.[1]

3. In May 2010, through its subsidiary Baha Mar Ltd., BML entered into a $2.45 billion secured debt facility with The Export-Import Bank of China ("China Eximbank") and a construction contract with CCA Bahamas Ltd. for the construction of the Baha Mar Resort. Baha Mar Ltd. became insolvent and entered liquidation proceedings in the Supreme Court of the Bahamas in 2014. In September 2016, judicially appointed receivers transferred the Baha Mar Resort to Perfect Luck, a Bahamian company that was beneficially owned at the time by China Eximbank. On December 1, 2017, Chow Tai Fook Enterprises, Ltd. ("Chow Tai"), a Hong Kong company that indirectly owns CTFD, acquired Perfect Luck through its subsidiary, CTF BM Holding Ltd., a British Virgin Islands company. Through that transaction, Perfect Luck became an indirect subsidiary of Chow Tai and an affiliate of CTFD, as both fell under the umbrella of Chow Tai's control.

4. In December 2017, BML filed a complaint against CCA Construction, Inc. and other entities in the Supreme Court of New York, County of New York (the "New York Action"). BML asserted claims for fraud and breach of contract, alleging that the New York defendants misrepresented the status of the Baha Mar Resort's construction and

---

[1] *See* C.A. No. 2021-0459-KSJM Docket ("Dkt") 34, Verified Am. Compl. For Breach of Contract, Specific Performance, Injunctive Relief and Declaratory J. ("Compl.").

intentionally delayed its completion. BML acknowledged in the New York complaint that control over the Baha Mar Resort's assets had been transferred.[2]

5. On January 11, 2018, BML sent letters to CTF BM Operations Ltd., CTF BM Holdings Ltd., and Perfect Luck requesting that they preserve and voluntarily agree to turn over any documents related to the Baha Mar Resort project. Bahamian counsel responded for all three entities on February 5, 2018, indicating that Perfect Luck would comply with the hold notice and that they, together with the Receivers, had taken steps to preserve potentially relevant documents in their possession. The joint letter included an admonition that BML comply with "all applicable legal requirements governing requests for discovery from non-parties in the Bahamas."[3]

6. On October 25, 2019, BML served CTFD with a subpoena issued by the Delaware Superior Court, seeking discovery materials related to the Baha Mar Resort project (the "Subpoena").[4] The Subpoena defined "CTF" as "Chow Tai Fook Enterprises,[5] including all of its present and former subsidiaries, affiliates, directors, officers, agents and employees or any person or entity acting or purporting to act on its behalf, including but

---

[2] Actually, the complaint alleged that there had been a "conditional agreement of merger of 'Perfect Luck' into" Chow Tai. Compl. Ex. 9. As Plaintiffs point out, this assertion was technically incorrect because Chow Tai bought Perfect Luck's shares and the transaction was therefore not a merger.

[3] Compl. Ex. 13.

[4] *See* Compl. Ex. 2 ("Subpoena").

[5] Plaintiffs consider this to be a reference to Chow Tai, and the court agrees, even though it does not include the abbreviation "Ltd."

not limited to [CTFD]."[6]  It defined "Affiliate(s)" as "an entity that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with another person or entity."[7]  It further defined "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, by contract, or otherwise."[8]

7.　　The Subpoena defined "PERFECT LUCK ASSETS" as Perfect Luck, "including all of its present and former subsidiaries, affiliates, directors, officers, agents and employees or any person or entity acting or purporting to act on its behalf, including but not limited to Perfect Luck Claims Limited."[9]  The Subpoena made specific reference to Perfect Luck in three document requests.  Request 1 sought documents concerning "agreements entered into between CTF, on the one hand, and Baha Mar Ltd., Perfect Luck Assets, or [the New York defendants], on the other" relating to the Baha Mar Resort project.[10]  Request 19 sought communications "between YOU and PERFECT LUCK ASSETS" concerning the Baha Mar Resort project.[11]  Request 20 sought "DOCUMENTS CONCERNING PERFECT LUCK ASSETS."[12]

---

[6] Subpoena at Definitions (f).

[7] *Id.* at Definitions (p).

[8] *Id.* at Definitions (p).

[9] *Id.* at Definitions (g).

[10] *Id.* at Doc. Req. 1.

[11] *Id.* at Doc. Req. 19.

[12] *Id.* at Doc. Req. 20.

8. CTFD objected to the Subpoena on a number of grounds, including that the Subpoena sought documents from affiliates that CTFD did not control because they were not its subsidiaries and that the Subpoena sought documents from Bahamian entities in violation of procedures established by treaty.[13]

9. Despite these objections, CTFD agreed to confer with its affiliates to obtain documents and make a production to BML to satisfy the Subpoena.

10. CTFD and BML entered into the Letter Agreement on September 4, 2020 to memorialize their settlement of the Subpoena.[14]

11. CTFD agreed to gather and provide documents from the "Baha Mar Affiliates," defined as "affiliated companies" of CTFD "that own and operate assets in the Bahamas comprising" the Baha Mar Resort.[15] CTFD specifically agreed to obtain copies of emails, documents, and data from the Baha Mar Affiliates and produce them to BML.

12. In exchange, BML agreed to withdraw the Subpoena, which would be of "no further force or effect."[16] BML further agreed that the production of documents pursuant to the Letter Agreement "shall be in complete satisfaction of (i) the Subpoena, and (ii) any and all other potential discovery obligations of [CTFD] and/or any of its parents, subsidiaries and affiliates (including the Baha Mar Affiliates) in connection with the" New

---

[13] *See* Dkt. 43 ("Def.'s Opening MTD Br.") Ex. A. These objections and responses are incorporated by reference into the Complaint. *See* Compl. ¶ 49.

[14] *See* Compl. Ex. 1 ("Letter Agreement").

[15] *Id.* § 1.

[16] *Id.* § 3(a).

York Action.[17] BML expressly agreed not to "seek or request either the Production, or the information previously requested in the Subpoena, in any other forum, from [CTFD] or any of its parents, subsidiaries and affiliates (including the Baha Mar Affiliates)."[18]

13.    The Letter Agreement contained a choice-of-law clause selecting Delaware law and a forum-selection clause requiring actions arising out of the Letter Agreement to be brought in Delaware.

14.    CTFD produced documents to BML on December 26, 2020, and BML voluntarily dismissed the Subpoena and related action that it had brought in the Delaware Superior Court on February 2, 2021.

15.    On April 5, 2021, BML filed a "Request for International Judicial Assistance Obtaining Evidence Abroad for Use in a Civil Matter" in the New York Action (the "Proposed Letter Rogatory").[19] If approved, the Proposed Letter Rogatory would function as a request from the New York Supreme Court to the Supreme Court of the Bahamas to compel Perfect Luck, a Bahamian company, to comply with a request for production of documents. The Proposed Letter Rogatory, though directed at Perfect Luck rather than CTFD, requests six categories of documents that allegedly overlap with several categories of documents requested in the Subpoena. The Proposed Letter Rogatory identifies the person from whom evidence is requested as a person with an "@ctfdi.com" email address.

---

[17] *Id.* § 5(a).

[18] *Id.* § 5(b).

[19] Compl. Ex. 3 ("Proposed Letter Rogatory").

16. On Saturday, May 22, 2021, CTFD sent a letter to BML objecting to the Proposed Letter Rogatory as a breach of the Letter Agreement and demanding that BML notify the New York Supreme Court that it would withdraw the Proposed Letter Rogatory by 5:00pm on Monday, May 24, 2021. On May 24, 2021, BML's counsel responded that it would reply to CTFD's letter later that week.

17. CTFD filed this action on May 25, 2021 for breach of contract, specific performance, and injunctive relief to prevent BML from pursuing discovery against Perfect Luck. CTFD also filed a motion for a temporary restraining order.[20] In the bench ruling denying the motion for a temporary restraining order, the court noted its concern that CTFD would have difficulty asserting its claim without Perfect Luck as a plaintiff.[21] CTFD then amended its complaint on July 2, 2021, joining Perfect Luck as a plaintiff, continuing to seek specific performance for breach of contract and injunctive relief in Counts I and II, and adding Count III for declaratory judgment.

18. On July 22, 2021, Plaintiffs moved for partial summary judgment as to Count III.[22] BML moved to dismiss the Complaint for failure to state a claim on July 26, 2021[23]

---

[20] *See* Dkt. 2.

[21] *See* Dkt. 38, ("TRO Ruling") at 7:13–8:4.

[22] Dkt. 39.

[23] Dkt. 40.

and for lack of subject matter jurisdiction on August 2, 2021.[24]  The parties completed briefing by August 26, 2021,[25] and the court heard oral argument on November 5, 2021.[26]

## LEGAL ANALYSIS

19.     The court first addresses the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).[27]  This court is one "of 'limited jurisdiction'; it acquires subject matter jurisdiction 'only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute.'"[28]  Equitable "jurisdiction over a matter is properly determined as of the time the complaint is filed and not ousted by later changes in circumstances that may alter the availability of equitable relief."[29]

---

[24] Dkt. 42.

[25] *See* Dkt. 39 ("Pls.' Opening MSJ Br."); Dkt. 45 ("Def.'s Answering MSJ Br."); Dkt. 51 ("Pls.' Reply MSJ Br."); Def.'s Opening MTD Br.; Dkt. 46, Pls.' Answering Br. in Opp'n to BML's Mot. to Dismiss Pls.' Am. Compl. Pursuant to Rules 12(b)(1) and 12(b)(6); Dkt. 49 ("Def.'s Reply MTD Br.").

[26] *See* Dkt. 62 ("Oral Arg. Tr.").

[27] *See* Ct. Ch. R. 12(b)(1).

[28] *Vama F.Z. Co. v. WS02, Inc.*, 2021 WL 1174690, at *2 (Del. Ch. Mar. 29, 2021) (quoting *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 2021 WL 1042985 (Del. Mar. 18, 2021) (TABLE)); *see also* 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."); *id.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

[29] *See Newberger v. Sandy River 2000, L.L.C.*, 2001 WL 432450, at *1 (Del. Ch. Apr. 20, 2001).

a.      Count II of the Complaint is for injunctive relief.  Plaintiffs "seek an injunction restraining [BML] from pursuing the Proposed Letter Rogatory and/or requesting any other information from Perfect Luck that was previously sought by [BML] in the Subpoena."[30]  Count I is for breach of contract and seeks specific performance of the Letter Agreement, alleging that Plaintiffs have suffered irreparable harm by (i) "incurring the expense, risk, inconvenience and disruption of litigation, as contemplated under Section 5(d) of the Letter Agreement;" (ii) "facing the potential that the Supreme Court of New York endorses a discovery request that [BML] promised never to make;" (iii) "facing costly and invidious litigation under The Bahamas Statute with The Bahamas Attorney General in the courts of The Bahamas;" and (iv) "having to produce documents that [BML] contractually promised never to seek."[31]

b.      Plaintiffs' requests for specific performance and the functionally equivalent claim for injunctive relief satisfy the second basis for the court's subject matter jurisdiction.[32]

---

[30] Compl. ¶ 135.

[31] *Id.* ¶ 123.

[32] *Klita v. Cyclo3pss Corp.*, 1997 WL 33174421, at *1 (Del. Ch. Apr. 8, 1997) ("Specific performance is a remedy available when damages may not be adequately ascertained or would not adequately compensate the plaintiff."); TRO Ruling at 5:15–21(observing that the claims for specific performance and injunctive relief were functional equivalents in this context); *see also CertainTeed Corp. v. Celotex Corp.*, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005) (observing that "claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties").

c. Of course, this court reviews a pleading for substance over form when evaluating subject matter jurisdiction, and BML asserts three arguments for why the substance of the Complaint fails to establish a foothold in equity.

d. BML first argues that Plaintiffs have not adequately alleged irreparable harm justifying the invocation of the court's equitable jurisdiction because BML would respond to a declaratory judgment in Plaintiffs' favor by withdrawing the Proposed Letter Rogatory. Thus, BML maintains that declaratory judgment would afford Plaintiffs all relief necessary to make them whole and the court therefore has no equitable jurisdiction over the Complaint.[33]

e. This argument fails. A party's representation that it will respond to a declaratory judgment by attempting to undo its breach does not necessarily divest the court of equitable jurisdiction, and none of the cases that BML cites compel a contrary result. *Athene Life*[34] and *Alliance Compressors*[35] each stand for the proposition that the court will not exercise subject matter jurisdiction over breach of contract actions in which past breaches are remediable by monetary damages and future breaches are speculative. That is not the scenario presented here.

f. Here, Plaintiffs seek to invoke the court's equitable powers to compel BML to withdraw the Proposed Letter Rogatory, the pendency of which is alleged

---

[33] *See* Def.'s Opening MTD Br. at 14–16; Def.'s Reply MTD Br. at 3–10.

[34] *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *8 (Del. Ch. July 31, 2019).

[35] *All. Compressors LLC v. Lennox Indus. Inc.*, 2020 WL 57897, at *1 (Del. Ch. Jan. 6, 2020).

to be a present and ongoing breach of the Letter Agreement. A declaratory judgment in Plaintiffs' favor will clarify the parties' rights and obligations with respect to the Letter Agreement, but not necessarily compel BML to take affirmative actions to remedy the alleged ongoing breach. BML's averments that it will withdraw the Proposed Letter Rogatory should the court issue declaratory judgment in Plaintiffs' favor are well-taken and may render an injunction or an order compelling specific performance unnecessary. That said, "if equity jurisdiction is properly invoked, this Court may retain jurisdiction even though circumstances arising after the filing of the complaint make it inappropriate or improper to grant equitable relief."[36]

g.    BML's second argument is that the Letter Agreement does not provide for equitable relief for the alleged breach. The Letter Agreement mentions equitable relief once, in Section 8(d), by authorizing the parties to seek "emergency equitable relief" for the "improper disclosure of any confidential information contained herein."[37]  BML contends that the "parties' decision to authorize specific performance for certain breaches of the Letter Agreement but *not* the breach alleged here" weighs against the availability of equitable jurisdiction.[38]

h.    This argument too fails. Delaware courts "have refused to construe a contract as taking away a common law remedy unless that result is imperatively

[36] *Lord & Burnham Corp. v. Four Seasons Solar Prods. Corp.*, 1984 WL 8233, at *4 (Del. Ch. Aug. 28, 1984).

[37] Letter Agreement § 8(d).

[38] Def.'s Opening MTD Br. at 16–17 (emphasis in original);  *see also* Def.'s Reply MTD Br. at 5–6 n.4.

required," and therefore, "the Supreme Court has held that, even if a contract specifies a remedy for breach of that contract, a contractual remedy cannot be read as exclusive of all other remedies if it lacks the requisite expression of exclusivity."[39]

i.     Thus, neither the parties' decision not to stipulate to equitable relief for the alleged breach nor the provision of its availability in another circumstance mandate a holding that specific performance or injunctive relief are unavailable.

j.     BML's final argument is that, because the requested equitable relief is directed at compelling BML to take actions in a different court, principles of comity weigh against allowing the case to move forward.[40] This argument is more compelling, as it would be perhaps more efficient for the New York court to resolve the parties' dispute. But the parties stipulated that such disputes be brought in Delaware, and for good reason—the Letter Agreement resolved a Subpoena issued by a Delaware court. The parties had the opportunity to present their disputes in the New York Action. They instead ceded to their contractually selected forum. And in the end, this court would not be doing its sister court any favors by sending this dispute its way. Comity does not compel such a discourtesy.[41]

---

[39] *Reid v. Thompson Homes at Centreville, Inc.*, 2007 WL 4248478, at *5 (Del. Super. Nov. 21, 2007).

[40] *See* Def.'s Opening MTD Br. at 17–18; Def.'s Reply MTD Br. at 7 n.5.

[41] *See also Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 387 (Del. 2013) (holding that the "enforcement of an international forum selection clause is not an issue of comity" but rather "a matter of contract enforcement and giving effect to substantive rights that the parties have agreed upon" and further that "[a]n anti-suit injunction operates *in personam* to enjoin the breaching party, not the foreign court").

12

k.     For the foregoing reasons, the court holds that it has subject matter jurisdiction over the Complaint. BML's motion to dismiss under Rule 12(b)(1) is denied.

20.     The court next turns to the motion to dismiss for failure to state a claim pursuant to Court of Chancery Rule 12(b)(6).[42] Under Rule 12(b)(6), "the governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[43] When considering a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[44] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[45]

a.     To survive a motion to dismiss under Rule 12(b)(6), a plaintiff claiming breach of contract must demonstrate: the existence of a contract, the breach of an obligation imposed by that contract, and damage resulting from the breach.[46] "A plaintiff must properly allege each of these elements, even where the plaintiff is

---

[42] *See* Ct. Ch. R. 12(b)(6).

[43] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[44] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[45] *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

[46] *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

13

seeking an equitable remedy such as specific performance."[47]  The court "cannot choose between two differing reasonable interpretations of ambiguous documents."[48]  "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[49]  The "true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."[50]  For dismissal to be appropriate under 12(b)(6), BML's interpretation of the Letter Agreement must be "the *only* reasonable construction as a matter of law."[51]

b.      BML argues that Plaintiffs' claim for breach of contract is facially deficient in two ways.  It first advances a plain language argument, that the Proposed Letter Rogatory does not seek information previously requested by the Subpoena, and thus BML did not breach the Letter Agreement.  Its second is an argument that Plaintiffs failed to properly allege damages, but as discussed above, Plaintiffs have sufficiently alleged irreparable harm justifying the imposition of the court's

---

[47] *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009).

[48] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).

[49] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[50] *Id.*

[51] *VLIW Tech.*, 840 A.2d at 615 (emphasis in original).

equitable jurisdiction, rendering a claim for damages non-essential to Plaintiffs' claim for breach of contract.

c. For its plain language argument, BML does not dispute that CTFD and Perfect Luck are in fact under common ownership and thus affiliates in any conventional sense of that word, as discussed more fully below. Rather, BML argues that the parties intended to carve out Perfect Luck from the definition of affiliates in the Letter Agreement. As its sole support, BML notes that Perfect Luck and "CTF" are defined separately in the Subpoena.

d. Contrary to BML's assertion, Perfect Luck was not expressly carved out from the definition of CTF. BML correctly observes that "CTF" and "PERFECT LUCK ASSETS" are defined separately in the Subpoena. "PERFECT LUCK ASSETS" was defined as Perfect Luck and any person or entity purporting to act on its behalf.[52] "CTF" meant Chow Tai, any person or entity purporting to act on its behalf, and its "affiliates . . . including but not limited to [CTFD]."[53] The mere fact of two separate definitions does not amount to an express carve-out of one from the other; BML cites no cases to the contrary.

e. Moreover, separate definitions for Chow Tai and Perfect Luck are readily explainable based on the timeline. The parties do not dispute that the timeline relevant to BML's involvement with the construction of the Baha Mar

[52] Subpoena at Definitions (g).

[53] *Id.* at Definitions (f).

15

Resort begins long before Perfect Luck acquired Baha Mar Ltd.'s assets and before Chow Tai indirectly acquired Perfect Luck.[54] Nor do they appear to dispute that Chow Tai and Perfect Luck's original parent company negotiated Perfect Luck's acquisition for more than a year before it was finalized.[55]

       f.      The Subpoena's separate definitions for Chow Tai and Perfect Luck are consistent with the evolving nature of their relationship, which is reflected in the requests to which those separate definitions may be relevant. The Subpoena sought documents concerning agreements entered into between Chow Tai and Perfect Luck,[56] communications between Chow Tai and Perfect Luck,[57] and non-privileged documents "which were turned over to" Chow Tai by Perfect Luck.[58] Further, even if Chow Tai had owned Perfect Luck since its creation, parent corporations and their subsidiaries are separate entities that may enter into agreements and communicate with one another.[59] Indeed, this court has seen requests that a defendant produce

---

[54] *See* Compl. ¶¶ 18–23; Def.'s Opening MTD Br. at 3.

[55] *See* Compl. ¶¶ 26–30; Def.'s Opening MTD Br. at 4.

[56] Subpoena at Doc. Req. 1.

[57] *Id.* at Doc. Req. 19.

[58] *Id.* at Doc. Req. 37.

[59] *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 667 (Del. Ch. 2012) (noting that "the separate legal existence of juridical entities is fundamental to Delaware law."); *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *5 (Del. Ch. Nov. 13, 2018) (noting that "there exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."); *see, e.g.*, *Reading Co. v. Trailer Train Co.*, 1984 WL 8212, at *5 (Del. Ch. Mar. 15, 1984) (describing transactions between parents and subsidiaries).

parent-subsidiary communications before.[60]  Thus, the court cannot accept BML's contention that Perfect Luck was carved out from the definition of Chow Tai.

g.      BML alternatively argues that dismissal is appropriate under Section 5(b) of the Letter Agreement, which prohibits BML from seeking "the information previously requested in the Subpoena."[61]  BML argues that the Proposed Letter Rogatory's six requests seek specific communications between Perfect Luck and a third party, none of which is a Chow Tai entity, while the Subpoena seeks Chow Tai's documents and communications, not Perfect Luck's.  But if Perfect Luck qualifies as a Chow Tai affiliate, then it is reasonably conceivable that the Subpoena did seek Perfect Luck's documents and communications.  At this stage, it is reasonably conceivable that the Proposed Letter Rogatory seeks discovery that was requested by the Subpoena and thus violates the Letter Agreement.

h.      For the foregoing reasons, the court holds that it is reasonably conceivable that BML breached the Letter Agreement by submitting the Proposed Letter Rogatory.  BML's motion to dismiss for failure to state a claim is denied.

21.     Finally, the court resolves Plaintiffs' motion for partial summary judgment as to Count III.  Under Court of Chancery Rule 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

---

[60] *See, e.g., Mennen v. Wilm. Tr. Co.*, 2013 WL 5288900, at *10–11 (Del. Ch. Sept. 18, 2013) (addressing a motion to compel, among other things, the production of communications shared between a parent and subsidiary).

[61] *See* Letter Agreement § 5(b).

judgment as a matter of law."[62]  On a motion for summary judgment, unlike a motion to dismiss, the court may consider evidence obtained in discovery, affidavits, and declarations.[63]  The court must view the evidence "in the light most favorable to the non-moving party, and the moving party bears the burden of demonstrating the absence of a material factual dispute."[64]  On the other hand, if "there are material factual disputes, that is, if the parties are in disagreement concerning the factual predicate for the legal principles they advance, summary judgment is not warranted."[65]  "There is no 'right' to a summary judgment."[66]

a.  The court must resolve three issues to determine whether Plaintiffs are entitled to summary judgment.  The first is whether Perfect Luck qualifies as an affiliate of CTFD under the Letter Agreement.  The second is whether Plaintiffs have standing to enforce the Letter Agreement.  The third is whether the Proposed Letter Rogatory breaches Section 5 of the Letter Agreement.

b.  First, Plaintiffs contend that Perfect Luck qualifies as an affiliate under the Letter Agreement in two ways, both under the common definition of

---

[62] Ct. Ch. R. 56(c).

[63] *See id.*; 10 *Del. C.* § 3927; *see also In re Gardner Denver, Inc.*, 2014 WL 715705, at *4 (Del. Ch. Feb. 21, 2014) (describing the standard for converting a motion to dismiss to a motion for summary judgment when matters outside the pleadings are presented to the court).

[64] *XO Commc'ns, LLC v. Level 3 Commc'ns, Inc.*, 948 A.2d 1111, 1117 (Del. 2007) (citation omitted).

[65] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[66] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (quoting *Anglin v. Bergold*, 565 A.2d 279 (Del. 1989)).

"affiliate" and as a "Baha Mar Affiliate."[67] While the Letter Agreement does not define the first term, "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."[68] Black's Law Dictionary defines "affiliate" as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or *sibling corporation*."[69] Plaintiffs have submitted a declaration in support of their motion demonstrating that CTFD and Perfect Luck are indirect subsidiaries of Chow Tai and therefore sibling corporations.[70] Further, Plaintiffs submit that Perfect Luck is a defined "Baha Mar Affiliate" because it controls the Baha Mar Resort's assets, and thus "own[s] and operate[s] assets in the Bahamas comprising" the Baha Mar Resort, satisfying the definition.[71]

 c. BML does not meaningfully dispute that Perfect Luck is an affiliate of CTFD. Rather, BML premises its opposition on its purported lack of knowledge that Perfect Luck was a CTFD affiliate at the time it was negotiating the Letter Agreement.[72] This argument is unavailing because "the private, subjective feelings

---

[67] Pls.' Opening MSJ Br. at 23–26.

[68] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006).

[69] *Affiliate, Black's Law Dictionary* (11th ed. 2019) (emphasis added).

[70] *See* Dkt. 39, Decl. of Bradley D. Hornbacher in Supp. of Pls.' Br. in Supp. of their Mot. for Partial Summ. J. on Count III for Declaratory J. ¶¶ 5–8.

[71] Letter Agreement § 1; *see also* Transmittal Decl. of Daniel S. Atlas in Supp. of Pls.' Brief in Supp. of their Mot. for Partial Summ. J. on Count III for Declaratory J. Ex. 7 ¶ 6.

[72] *See* Def.'s Answering MSJ Br. at 19–23; Dkt. 45, Decl. of Peter C. Sheridan in Supp. of Def.'s Opp'n to Mot. for Partial Summ. J. on Count III for Declaratory J. ¶¶ 12–14.

of the negotiators are irrelevant and unhelpful to the Court's consideration of a contract's meaning, because the meaning of a properly formed contract must be shared or common."[73] The court holds that Perfect Luck qualifies as an affiliate of CTFD, and indeed as a Baha Mar Affiliate, under the plain meaning of the Letter Agreement.

d.      Second, the court turns to standing. BML argues that CTFD's harm from Perfect Luck being forced to respond to discovery is speculative and suggests that CTFD therefore does not have standing to enforce the Letter Agreement.[74]

e.      It is difficult to conceive of any practical utility to this argument. Perfect Luck is a Plaintiff. Perfect Luck is also a third-party beneficiary with standing to enforce the Letter Agreement. In Delaware, "intended third-party beneficiaries have an enforceable right under contracts conferring a benefit to them, even though they are not parties to those contracts."[75] To demonstrate third-party beneficiary status, a plaintiff must show

> (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.[76]

---

[73] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 835 (Del. Ch. 2007).

[74] *See* Def.'s Answering MSJ Br. at 27–28; Oral Arg. Tr. at 61.

[75] *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004).

[76] *Madison Realty P'rs 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001).

f.　　　Section 5(a) of the Letter Agreement provides that the production the parties agreed to thereunder would "be in complete satisfaction of . . . (ii) any and all other discovery obligations of [CTFD] and/or any of its parents, subsidiaries and affiliates (including the Baha Mar Affiliates) in connection with the" New York Action.[77]  The court holds that Perfect Luck is a third-party beneficiary under the Letter Agreement because, as a CTFD affiliate, Section 5(a) clearly contemplates that its discovery obligations in connection with the New York Action would be satisfied by the Letter Agreement.  BML's argument in opposition is premised again on its lack of knowledge that Perfect Luck was an affiliate of CTFD and is again rejected.

g.　　　Because Perfect Luck has standing, knocking out CTFD has no practical effect on the case.  In any event, as Plaintiffs point out, however, CTFD is a signatory to the Letter Agreement, and "[i]t is axiomatic that either party to an agreement may enforce its terms for breach thereof."[78]  Thus, the court holds that CTFD has standing to enforce the Letter Agreement.

h.　　　Finally, Plaintiffs argue that the Proposed Letter Rogatory breaches two subsections of the Letter Agreement: Section 5(a) for seeking any discovery whatsoever from Perfect Luck, a CTFD affiliate, in connection with the New York Action and Section 5(b) for seeking "the information previously requested in the

---

[77] Letter Agreement § 5(a).

[78] *Triple C Railcar Serv., Inc., v. City of Wilm.*, 630 A.2d 629, 635 (Del. 1993).

21

Subpoena."[79]   The parties dispute the interplay of Section 5(a) and Section 5(b), with each side accusing the other of failing to reconcile the two.[80]   This court has "consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive."[81]

i.       BML contends that Section 5(a) generally states that the production will satisfy the Chow Tai entities' discovery obligations with respect to the New York Action while Section 5(b) sets specific limits on what could be sought going forward.[82]   Plaintiffs, meanwhile, argue that Section 5(a) provides that, "regardless of subject matter," BML may request no more discovery from Chow Tai entities in connection with the New York Action, while Section 5(b) then ensures that BML may not re-request previously sought information.[83]

j.       The court adopts BML's reading, which best interprets the Letter Agreement "in such a way as to not render any of its provisions illusory or meaningless."[84]   Under well-settled rules of contract construction, a contract must

---

[79] *See id.* § 5(a)–(b).

[80] *See* Def.'s Answering MSJ Br. at 25; Pls.' Reply MSJ Br. at 15–16.

[81] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001).

[82] *See* Oral Arg. Tr. at 17:10–14.

[83]*Id.* at 34.  *See also id.* at 37–38 (Plaintiffs' counsel arguing that "5(a) may overlap with 5(b).  But, again, frankly, so what?  5(a) of our contract obliterates the target as far as we're concerned.  5(b) comes back for more, because we wanted to make it absolutely clear we are done.").

[84] *Sonitrol Hldg. Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992).

be construed "as a whole," such that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."[85]  Thus, the court holds that Section 5(a) is a general provision establishing that the Chow Tai entities' discovery obligations were satisfied by the agreed-upon production, while Section 5(b) establishes the specific limits on what BML may request in the future.

k.  The final question is whether the Proposed Letter Rogatory breaches Section 5(b) by seeking information previously requested by the Subpoena.  Many of the requests appear to overlap.[86]  However, the requests are not identical, and the parties dispute the extent to which the Proposed Letter Rogatory and the Subpoena seek the same information.[87]  This strikes the court as a material factual dispute precluding summary judgment in Plaintiffs' favor, as additional discovery could aid the court in resolving this issue.[88]

l.  BML raises an additional question of material fact precluding summary judgment.  Section 1 of the Letter Agreement states that CTFD "does not

---

[85] *DCV Hldgs., Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).

[86] *Compare* Proposed Letter Rogatory at Doc. Req. 1, *with* Subpoena at Doc. Req. 6; *compare* Proposed Letter Rogatory at Doc. Req. 2, *with* Subpoena at Doc. Req. 23; *compare* Proposed Letter Rogatory at Doc. Req. 3, *with* Subpoena at Doc. Req. 15; *compare* Proposed Letter Rogatory at Doc. Req. 4, *with* Subpoena at Doc. Req. 17; *compare* Proposed Letter Rogatory at Doc. Req. 5, *with* Subpoena at Doc. Req. 1; *compare* Proposed Letter Rogatory at Doc. Req. 6, *with* Subpoena at Doc. Req. 8–11.

[87] *See* Def.'s Answering MSJ Br. at 24–25; Pl.'s Opening MSJ Br. at 27–30.

[88] *See* Dkt. 45, Rule 56(f) Decl. of Elisha Barron in Supp. of Def.'s Opp'n to Mot. for Partial Summ. J. on Count III for Declaratory J.

have access to the records of the Baha Mar Affiliates or the Resort in the ordinary course of business." This may prove untrue, because some of Perfect Luck's officers are officers of CTFD, the two entities share an office, and the @ctfdi.com email address on the Proposed Letter Rogatory indicates that the companies also share email servers.[89] Thus, whether CTFD made a misrepresentation about its access to Perfect Luck's records is a question of fact precluding summary judgment, because such a misrepresentation would call into question the validity of the entire Letter Agreement.[90]

m.    Due to the existence of material factual issues that remain in dispute, Plaintiffs' motion for partial summary judgment is denied.

22.    For the foregoing reasons, BML's motions to dismiss are DENIED and Plaintiffs' motion for partial summary judgment is DENIED.

/s/ Kathaleen St. J. McCormick
Chancellor Kathaleen St. J. McCormick
Dated: January 5, 2022

---

[89] *See* Proposed Letter Rogatory; Dkt. 47, Transmittal Decl. of Brian Farnan in Supp. of Def.'s Opp'n to Mot. for Partial Summ. J. Ex. I; Ex. K.

[90] *See Martin v. Med-Dev Corp.*, 2015 WL 6472597, at *12 (Del. Ch. Oct. 27, 2015) ("Transactions entered into in reliance on material misrepresentations are voidable.").